UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

J.L. *et al.*,

                                       Plaintiffs,

                   -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                       Defendant.

24 Civ. 1926

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiffs J.L. and A.L. bring this action against the New York City Department of Education ("DOE") individually and on behalf of their minor daughter, P.L., who has an autism spectrum disorder. Plaintiffs seek, *inter alia*, reimbursement for the cost of therapeutic services during the 2020–21 school year as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Article 89 of the New York State Education Law, N.Y. Educ. Law § 4401 *et seq.* The parties agree that P.L. is entitled under the IDEA to a free and appropriate public education ("FAPE"), but they dispute whether DOE had a reimbursement obligation for the period July 2020 through January 2021.

In moving now to dismiss for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1), DOE claims that no administrative order or agreement required it to reimburse plaintiffs for the period in question. It argues that a student's pendency entitlement arises only when a due process complaint ("DPC") is filed, and that, because plaintiffs' DPC was not filed until February 9, 2021, recovery for the then-in-progress 2020–21 school year is barred. Dkt. 13 at 10–11. But DOE overlooks a vital fact: that during the claimed reimbursement period, pendency proceedings arising out of a July 1, 2019 DPC were pending. *See* Dkt. 15 ("Amended

Complaint" or "AC") ¶¶ 20, 25. And under the IDEA's "stay-put" provision, "[d]uring the pendency of *any* proceedings conducted pursuant to this section, . . . the child shall remain in the then-current educational placement." 20 U.S.C. § 1415(j) (emphasis added). The "then-current" placement for P.L. for that year was set by a May 19, 2020 administrative order that covered the therapeutic services for which plaintiffs seek reimbursement here. *See* AC ¶¶ 26–27. In these circumstances, plaintiffs have plausibly alleged that DOE was under an administrative obligation to fund those services during the claimed period. They thus have Article III standing to pursue their claims against DOE. The Court denies DOE's motion to dismiss.

**I.     Background**

**A. Statutory and Administrative Framework**

Congress enacted the IDEA to promote the education of students with disabilities. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295 (2006). The IDEA offers federal funds to states in exchange for a commitment to provide a FAPE to all children with disabilities. 20 U.S.C. § 1412(a)(1)(A); *see also Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). A FAPE should "emphasize[] special education and related services designed to meet the[] unique needs" of a child with a disability and "prepare" the child "for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

To that end, school districts in receipt of IDEA funds must formulate an Individualized Education Program ("IEP") for each eligible student that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 580 U.S. at 399. The IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed

instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see also* 20 U.S.C. § 1414(d)(1)(A)(i).

If a parent believes that the educational program offered by a school district does not offer an adequate FAPE, the parent may file a DPC "with respect to any matter relating to identification, evaluation or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1). The filing of the DPC triggers the "stay-put" provision of the IDEA, which prohibits the school district from changing the student's placement during the pendency of any administrative or judicial proceeding conducted under the IDEA. *See Honig*, 484 U.S. at 323 (1988); *see also N.Y.C. Dep't of Educ. v. S.S.*, No. 9 Civ. 810, 2010 WL 983719, at *6 (S.D.N.Y. Mar. 17, 2010) (the stay-put provision reflects "Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." (emphasis removed)). To determine the last agreed-upon educational placement, courts examine (1) the placement described in the most recently implemented IEP, (2) the operative placement at the time when the stay-put provision was invoked, and (3) the placement at the time of the previously implemented IEP. *See Mackey v. Bd. Of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004)).

A student's then-current placement can be changed only by one of four ways: (1) an agreement of the parties, (2) an unappealed hearing officer or court decision, (3) an SRO decision that agrees with the child's parents, or (4) determination by a court on appeal from an SRO's decision. 34 C.F.R. § 300.514(c); *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692,

3

697 (S.D.N.Y. 2006). Upon a pendency changing event, any change applies "only on a going-forward basis." *S.S.*, 2010 WL 983719, at *1.

In New York, there is a two-tiered process for reviewing DPCs. Claims are first heard by an impartial hearing officer ("IHO"). N.Y. Educ. L. § 4404(1). An IHO's determination can be further appealed to a State Review Officer ("SRO"). N.Y. Educ. L. § 4404(2). The parent or the school district may seek judicial review of an SRO's decision in state or federal court. 20 U.S.C. § 1415(i); 34 C.F.R. § 300.516; N.Y. Educ. L. § 4404(3). Courts have broad authority under the IDEA to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); *see also S.S.*, 2010 WL 983719, at *5.

### B. Plaintiffs' Allegations

The following facts, drawn from the AC, are treated as true for the purposes of resolving a motion to dismiss. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may consider evidence outside the pleadings. *See id.* P.L. is a minor diagnosed with an autism spectrum disorder and is covered by the IDEA. AC ¶ 1. Beginning in 2018, plaintiffs filed a series of complaints under the IDEA relating to services for P.L.

#### 1. The 2017–18 and 2018–19 School Years

On June 29, 2018, plaintiffs filed a DPC based on DOE's failure to provide P.L. with a FAPE for the 2017–18 school year. Dkt. 12, Ex. 1. On August 28, 2018, an IHO issued a pendency order, directing that, consistent with P.L.'s IEP, DOE provide (1) 10 hours per week of Special Education Itinerant Teacher ("SEIT") and related services, including three 45-minute sessions of speech and language therapy, three 45-minute sessions of occupational therapy, and three 45-minute sessions of physical therapy. *See id.* The IHO specified that "[f]unding for

4

these services shall be required as of the date of the hearing request, June 29, 2018," and "shall continue until this matter is completed or as otherwise agreed by the parties." *Id.* at 4.

In September 2018, P.L. was diagnosed with epilepsy. Dkt. 12, Ex. 2. To address P.L.'s evolving needs, P.L.'s parents privately developed a home program for her that consisted of 30–35 hours of Applied Behavior Analysis ("ABA") therapy with related speech and occupational therapy services. *Id.* On November 1, 2018, plaintiffs filed an amended DPC seeking reimbursement for ABA services incurred during the 2017–18 school year, and preemptively seeking funding for such services for the 2018–19 school year. AC ¶ 25.

On May 19, 2020, the IHO issued a decision finding that, for the 2017–18 school year, P.L was entitled to reimbursement for 10 hours per week of ABA therapy in addition to the recommended 10 hours per week of SEIT services. *See* Dkt. 12, Ex. 2. For the 2018–19 school year, the IHO directed DOE to fund, for the 2018–19 school year, 35 hours per week of ABA therapy and 10 hours per week of SEIT services. *See id.* This placement (the "May 19, 2020 Order")—which included the 30–35 hours per week of ABA therapy—was unappealed and final. AC ¶¶ 23, 39–40. It thus became P.L.'s operative pendency placement. *See id.*

### 2. The 2019–20 School Year

On July 1, 2019, plaintiffs filed a DPC seeking therapeutic and other related services for P.L. for the 2019–20 school year. *Id.* ¶ 20. On July 31, 2019, the IHO issued a pendency order entitling P.L. to 10 hours per week of ABA therapy and 10 hours per week of SEIT services. *Id.* ¶ 22. But the DPC proceedings relating to the 2019–20 school year continued until December 2, 2022. *Id.* ¶ 44. On that day, an IHO decision, which was not appealed, determined that DOE was required for the 2019–20 school year to fund up to 40 hours per week of combined ABA and SEIT services. *Id.* ¶ 25. Thus, between May 19, 2020 and December 2, 2022, J.L.'s operative

5

pendency placement was the final May 19, 2020 Order, which provided for 30–35 hours per week of ABA services. *Id.* ¶ 27.

### 3. 2020–21 School Year

On February 9, 2021, plaintiffs filed another DPC seeking reimbursement for therapeutic services and related relief for P.L. for the ongoing 2020–21 school year. *Id.* ¶ 28. On March 29, 2021, the parties executed a pendency program effective February 9, 2021, that stipulated, consistent with the discussion above, that the "last agreed upon placement" was the May 19, 2020 decision. *Id.* ¶ 31. Proceedings related to the 2020–21 school year did not conclude until March 23, 2023, when an administrative decision issued that did not grant P.L. ABA or SEIT services, but directed DOE to fund P.L.'s tuition and transportation costs for the 2020–21 school year. AC ¶ 37; *see also* Dkt. 12, Ex. 6.

## C. Procedural History

On March 14, 2024, plaintiffs filed a Complaint in this Court. It sought, *inter alia*, a reimbursement of $33,925.50 for ABA and SEIT therapy costs incurred during the 2020–21 school year (from July 2020 through January 2021). On May 1, 2024, after two extensions, DOE filed a motion to dismiss under Rule 12(b)(1), arguing that plaintiffs lacked standing to pursue damages for the 2020–21 school year. Dkt. 11. On May 22, 2024, plaintiffs filed the AC. Dkt. 15. On June 11, 2024, DOE filed a letter stating that it would rely on its previously filed motion to dismiss. Dkt. 16. Plaintiffs did not file an opposition.

## II. Discussion

### A. Legal Standards Governing Motions Under Rule 12(b)(1)[1]

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison*, 547 F.3d at 170 (citation omitted). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted). On a motion challenging jurisdiction under Rule 12(b)(1),[2] the Court may properly refer to matter outside the pleadings. *Makarova*, 201 F.3d at 113.

---

[1] A plaintiff's failure to oppose a motion to dismiss does not require dismissal of a complaint or change the standard of review. *See Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000); *Gould v. Airway Off., LLC*, No. 15 Civ. 7964 (PAE), 2016 WL 3948102, at *2 (S.D.N.Y. July 19, 2016). The Court tests the legal adequacy of such a complaint applying the same standards applicable to opposed motions to dismiss. *See McCall*, 232 F.3d at 322; *Gould*, 2016 WL 3948102, at *2. The Court assumes here that plaintiffs did not file an opposition based on their view that the AC—which sharpened plaintiffs' claim with regard to DOE's obligations during the relevant period—had cured the deficiencies alleged in DOE's motion to dismiss, on which DOE continued to rely.

[2] DOE's challenge to a reimbursement obligation presents a threshold methodological question as to whether this challenge implicates plaintiffs' standing, under Rule 12(b)(1), or whether they have stated a plausible claim, under Rule 12(b)(6). The Court's assessment is that were DOE's claim of a lack of legal entitlement to reimbursement meritorious, such would likely entitle DOE to dismissal on either ground, making this case one in which "merits and jurisdiction . . . come intertwined," and in which "the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Brownback v. King*, 592 U.S. 209, 218 & n.8 (2021) (noting existence of circumstances where a ruling on subject matter jurisdiction "may simultaneously be a judgment on the merits"). Here, however, because the Court finds the claim of a reimbursement obligation well-pled, there is no occasion to resolve this methodological issue.

7

To establish the "irreducible constitutional minimum" of Article III standing—which DOE's challenge to subject matter jurisdiction contests—a complaint must plead three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). To establish injury in fact, a plaintiff must show that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). For an injury to be "fairly traceable" to a defendant, there must be "a causal nexus between the defendant's conduct and the injury." *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992) (citing *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

## B. Analysis

In disputing plaintiffs' Article III standing, DOE argues that plaintiffs have not pled a legal right to reimbursement from DOE for the cost of P.L.'s therapeutic services from July 2020 through January 2021. DOE argues that no administrative order or agreement required DOE to reimburse plaintiffs for therapeutic costs incurred from July 2020 through January 2021—and, therefore, that plaintiffs suffer no injury fairly traceable to DOE. The premise of this argument is that DOE's pendency obligations for the 2020–21 school year were "triggered on February 9, 2021 with the filing of the DPC." Dkt. 13 at 10 (citing *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (student's entitlement to pendency arises when DPC is filed)). Because plaintiffs did not file their DPC until "*after* the period for which Plaintiffs seek reimbursement in

8

this action," DOE argues, plaintiffs are not entitled to reimbursement during the relevant period. Dkt. 13 at 10 (emphasis in original).

DOE's argument fails because it ignores P.L.'s pendency rights from a previously filed DPC. Under the "stay-put" provision of the IDEA, a child is entitled to "remain in the then-current educational placement" during "the pendency of *any* proceedings conducted pursuant to this section," and "until *all such proceedings have been completed.*" 20 U.S.C. § 1415(j) (emphasis added). Here, DOE overlooks the fact that proceedings arising out of a DPC filed on July 1, 2019 were pending resolution throughout the claimed entitlement period and did not conclude until December 2, 2022. AC ¶¶ 23, 27. As the AC alleges, P.L.'s educational placement during that entire period was set by the May 19, 2020 Order, which provided for 30–35 hours per week of ABA services. *Id.* As such, DOE's funding obligations did not arise from the February 9, 2021 DPC, as DOE presupposes. Instead, these arose from the July 1, 2019 DPC, which triggered the IDEA's "stay-put" provision, and which resulted in the May 19, 2020 Order. *See Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002) (while pendency proceedings are ongoing, school district must continue funding student's last agreed-upon placement "until a new placement is established" by a final agreement or *unappealed* administrative decision); *Arlington*, 421 F. Supp. 2d at 697 (same); *S.S.*, 2023 WL 8480726, at *3 (same).

On this premise, which the AC plausibly pleads, DOE was required by the statutory stay-put provision to fund P.L.'s then-current placement, which, per the May 2020 Order, included 30–35 hours of ABA therapy. Insofar as the AC pleads the DOE did not fund and has not funded that therapy, the AC has plead all the elements of Article III standing: (1) an injury in fact (deprivation of a procedural right under the IDEA *and* lack of monetary repayment), (2)

traceable to unlawful conduct by the defendant (DOE's failure to meet its alleged pendency obligations), that is (3) redressable by a favorable decision (an order mandating DOE to make such payment). *See, e.g., A.S. ex rel. P.B.S. v. Bd. of Educ. for Town of W. Hartford*, 47 F. App'x 615, 616 n.2 (2d Cir. 2002) ("Under the IDEA, a 'stay put' is a procedural right"); *Melendez v. N.Y.C. Dep't of Educ.*, 420 F. Supp. 3d 107, 117 (S.D.N.Y. 2019) (collecting cases) (deprivation of a pendency entitlement constitutes an "injury in fact that confers standing"); *S.W. v. N.Y.C. Dep't of Educ.*, 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009) ("The denial of a FAPE or of a procedural right created by the IDEA . . . constitutes an injury sufficient to satisfy the standing requirement"); *de Paulino v. N.Y.C. Dep't of Education*, No. 19 Civ. 222, 2019 WL 1448088, at *3 (S.D.N.Y. Mar. 20, 2019) (DOE's failure to satisfy financial obligation constitutes an "injury in fact for standing purposes"), *aff'd sub nom. de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020); *Cruz v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 12140, 2019 WL 147500 (S.D.N.Y. Jan. 9, 2019) (same).

## CONCLUSION

For the reasons above, the Court denies DOE's motion to dismiss. The Clerk of Court is respectfully directed to close all pending motions.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 25, 2024
New York, New York